IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| STEVEN TODD FAIRCLOTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:25-CV-439 (MTT) |
| DEPUTY PAUL SIMMONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

Plaintiff Steven Todd Farircloth filed this pro se lawsuit and contemporaneously moved for leave to proceed *in forma pauperis* ("IFP"). ECF 1; 2. On November 12, 2025, the Court granted Faircloth's motion to proceed IFP and found his complaint deficient pursuant to 28 U.S.C. § 1915(e). ECF 3. Faircloth was thus ordered to recast and has since filed an amended complaint. ECF 3; 6. Because Faircloth is proceeding IFP, the Court must screen and dismiss his amended complaint: (1) if it is frivolous or malicious; (2) if it fails to state a claim upon which relief may be granted; or (3) if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "A dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard as a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Thomas v. Harris*, 399 F. App'x 508, 509 (11th Cir. 2010) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)).

**I. DISCUSSION**

**A. Factual Allegations**

Faircloth alleges he was unlawfully arrested on September 11, 2023 by a Deputy of the Bibb County Sheriff's Office. ECF 6 ¶ 15. At some point after his arrest, Faircloth

was transported to the River's Edge Behavioral Health Center and was ultimately transferred to the Houston County Detention Center. *Id.* ¶¶ 11, 13, 18, 19. Faircloth alleges his transfer was unlawful because it was completed "without a warrant, without paperwork, and without authorization." *Id.* ¶¶ 11, 18, 19.

During his confinement in Houston County, Faircloth alleges that the defendants "subjected him to conditions amounting to punishment, deprivation, physical assault, and medical neglect." *Id.* ¶ 13. Specifically, he alleges that he was placed in solitary confinement on September 23, 2023 without a hearing, notice, or explanation. *Id.* ¶ 20. According to Faircloth, the cell was small, it was between 50 and 60 degrees Fahrenheit, it was "filthy," and the emergency call button was broken. *Id.* ¶¶ 21. Faircloth alleges that officers ignored him for four to five days at a time, despite his attempts to knock on the door to signal for help. *Id.* ¶¶ 23, 25. Faircloth's attempts to signal for help caused his finger to swell and bruise, so he "tied a sheet around his hand and struck the metal desk to call for attention." *Id.* ¶ 26.

On September 28, 2023, Faircloth alleges that Deputy Simmons approached his cell with a taser drawn, entered his cell, and without warning, "grabbed Plaintiff's jumpsuit," "lifted him off the ground," "shook him," and "slammed his head into the concrete wall, causing a golf-ball [sized] hematoma." *Id.* ¶ 27, 28, 30. Faircloth alleges he was standing still with his hands at his sides when Deputy Simmons entered his cell. *Id.* ¶ 29. After the alleged assault, Deputy Simmons screamed, "[i]f you bang on that door one more time, I'm gone whoop your ass[.]" *Id.* ¶ 31.

After the assault, Faircloth alleges that Deputy Simmons removed Faircloth's mattress, blanket, cup, and his remaining belongings, forcing him to sleep "on bare steel in freezing conditions." *Id.* 32, 33. Faircloth alleges that two nurses examined his

hematoma through the door slot and never followed up on his injury. *Id.* ¶ 35. According to Faircloth, the nurses acknowledged his head injury, "but provided only aspirin." *Id.* ¶ 33.

Faircloth alleges that he "filed immediate written complaints." *Id.* ¶ 36. According to Faircloth, Major Blanton received and acknowledged the complaints. *Id.* ¶ 37. Additionally, Faircloth alleges that Captain Runyon received follow-up communications, and Captain Westbrook reviewed Deputy Simmons' use-of-force documentation.[1] *Id.* ¶¶ 36-40. According to Faircloth, none of the "supervisory"[2] defendants interviewed Faircloth, reviewed the camera footage, addressed Faircloth's medical needs, disciplined Simmons, or corrected the conditions of Faircloth's cell. *Id.* ¶ 40.

Faircloth asserts ten claims arising from his detention in Houston County: (1) Excessive Force under the Fourteenth Amendment against Deputy Simmons; (2) Deliberate Indifference to Serious Medical Needs against Deputy Simmons, Major Blanton, Captain Runyon, and Captain Westbrook; (3) Unconstitutional Conditions of Confinement against Deputy Simmons and the supervisory defendants; (4) Failure to Protect under the Fourteenth Amendment against Major Blanton, Captain Runyon, and Captain Westbrook; (4) Supervisory Liability against Major Blanton, Captain Runyon, and Captain Westbrook; (6) Municipal Liability against Houston County; (7) Assault and Battery against Deputy Simmons; (8) False Imprisonment against Deputy Simmons and the supervisory defendants; (9) Intentional Infliction of Emotional Distress against

---

[1] Faircloth does not allege what he wrote in his complaint, the nature of the follow-up communications, or what information was included in Simmons' use-of-force documentation. ECF 6 ¶¶ 37-39.

[2] Faircloth refers to Major Blanton, Captain Runyon, and Captain Westbrook as "supervisory" defendants. ECF 6 ¶ G. However, apart from their titles, Faircloth does not allege the level of supervisory authority each defendant held.

Deputy Simmons; and (10) "Negligent Hiring/Retention/Supervision" against Houston County. *Id.* at 3. Faircloth requests compensatory damages, punitive damages, and costs and fees under 42 U.S.C. § 1988. *Id.* at 3-4.

**B. Excessive Force Claim**

First, Faircloth asserts an excessive force claim under the Fourteenth Amendment against Deputy Simmons. ECF 6 at 3. The use of force against a pre-trial detainee is governed by the Fourteenth Amendment's due process clause. *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). To state a claim, "[a] detainee must show 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1300 (11th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (11th Cir. 2023)). Courts consider six non-exhaustive factors when evaluating the reasonableness of force used: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the threat reasonably perceived by the officer"; and (5) "whether the plaintiff was actively resisting." *Id.* at 1301 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Faircloth alleges that Deputy Simmons entered his cell with a taser drawn and, although Faircloth "stood still with his hands at his side," Deputy Simmons lifted Faircloth by his jumpsuit, shook him, and slammed him into the concrete wall. *Id.* ¶¶ 29-30. At this stage, Faircloth has plausibly alleged that Deputy Simmons purposefully and knowingly used force against him that was objectively unreasonable.

Thus, Faircloth's Fourteenth Amendment excessive force claim against Deputy Simmons will proceed for further factual development.

**C. Deliberate Indifference to Serious Medical Needs Claims**

Next, Faircloth asserts a deliberate indifference to medical needs claim against Deputy Simmons, Major Blanton, Captain Runyon, and Captain Westbrook. ECF 6 at 3. Like excessive force claims, deliberate indifference claims brought by pre-trial detainees are analyzed under the Fourteenth Amendment's due process clause. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.* To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege: (1) "an objectively serious medical need"; (2) "that the prison official acted with an attitude of 'deliberate indifference' to the serious medical need;" and (3) a "'necessary causal link' between the challenged conduct and [the plaintiff's] injuries." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 863-40 (1994) and *Marbury*, 936 F.3d at 1233); *See Wade v. McDade,* 106 F.4th 1251, 1253 (11th Cir. 2024).

As for the first prong, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). To state a claim for deliberate indifference, the plaintiff must allege that the defendant (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).

While Faircloth's allegations relating to Deputy Simmons' knowledge of Faircloth's medical conditions are thin, Faircloth's allegations that Deputy Simmons assaulted him, which caused a "golf-ball [sized] hematoma" on his head, and forced him to sleep on steel without a blanket, mattress, or his other belongings are sufficient, at this stage, to state a claim for deliberate indifference to medical needs. ECF 6 ¶¶ 27-32. However, as for Major Blanton, Captain Runyon, and Captain Westbrook, Faircloth alleges only that Captain Blanton reviewed his written complaints, that Captain Runyon received "follow-up communications," and that Captain Westbrook reviewed Deputy Simmons' use-of-force documentation. *Id.* ¶¶ 37-39. Faircloth does not allege what was written in his complaints, what was discussed in the follow-up communications, or what was disclosed in the use-of-force documentation. *Id.* Thus, Faircloth has not plausibly alleged that Major Blanton, Captain Runyon, or Captain Westbrook were "subjectively aware that [Faircloth] was at a risk of serious harm."[3] *Wade*, 106 F.4th at 1255.

Thus, Faircloth's deliberate indifference to medical needs claim against Deputy Simmons shall proceed for further factual development. However, Faircloth's remaining deliberate indifference to medical needs claims are **DISMISSED**.

**D. Unconstitutional Conditions of Confinement Claims**

Faircloth also asserts a claim for conditions of confinement against Deputy Simmons, Major Blanton, Captain Runyon, and Captain Westbrook. ECF 6 at 3. The Eleventh Circuit historically has applied the same standard for pretrial

---

[3] Faircloth also mentions two nurses and medical staff who examined his hematoma. ECF 6 ¶¶ 34-35. Faircloth has not named those individuals as defendants in this action. *Id.* at 1. Moreover, he does not identify those individuals anywhere in his complaint. *Id.* at 1-4. Thus, to the extent Faircloth intended to bring a deliberate indifference claim against the nurses and/or medical staff, Faircloth has failed to state a claim against them, and those claims are **DISMISSED**.

detainees' Fourteenth Amendment conditions of confinement claims and convicted prisoners' Eighth Amendment conditions of confinement claims. *See Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1188 (11th Cir. 2020); *see also Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (stating that "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments") (quotations omitted). As stated above, to state a conditions of confinement claim, a plaintiff must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

Faircloth alleges that Deputy Simmons removed his mattress, blanket, cup and belongings from his cell after slamming his head against the wall. ECF 6 ¶ 32. Because he had no belongings, Faircloth alleges that he had to "sleep on bare steel in freezing conditions." *Id.* ¶¶ 22, 33. While Faircloth's allegations related to his conditions of confinement claim are thin, they are sufficient at this stage to state a claim against Deputy Simmons. However, Faircloth has failed to plausibly allege that Major Blanton, Captain Runyon, or Captain Westbrook knew, or were deliberately indifferent to a substantial risk of serious harm arising from Faircloth's conditions of confinement.

Accordingly, Faircloth's conditions of confinement claim against Deputy Simmons will proceed for further factual development. However, Faircloth's conditions of confinement claims against Major Blanton, Captain Runyon, and Captain Westbrook are **DISMISSED**.

**E. Failure to Protect Claims**

Faircloth also asserts a failure to protect claim against Major Blanton, Captain Runyon, and Captain Westbrook. ECF 6 at 3. Failure to protect claims brought by pre-trial detainees are governed by the Fourteenth Amendment's due process clause, but are analyzed using the same standard as Eighth Amendment failure to protect claims. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (1996). Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Farmer,* 511 U.S. at 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To state a claim for failure to protect, a plaintiff must allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d at 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). Plaintiffs can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner. *Marbury*, 936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005). The deliberate indifference for failure to protect is the same

as the standard for deliberate indifference to medical needs. *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).

Like his deliberate indifference to medical needs claims, Faircloth's failure to protect claims against Major Blanton, Captain Runyon, or Captain Westbrook are supported only by the allegations that the defendants either read Faircloth's complaint, engaged in follow-up communications, or read Deputy Simmons' use-of-force report. ECF 6 ¶¶ 36-40. That is not enough to show that either defendant was subjectively aware that Faircloth faced a risk of harm from Deputy Simmons or that they acted with "subjective recklessness as used in the criminal law," particularly not here, where any reports or complaints occurred after the alleged assault. *Id*; *Wade*, 106 F.4th at 1255. Thus, Faircloth has failed to allege that either supervisor acted with deliberate indifference to a substantial risk of harm to Faircloth.

Accordingly, Faircloth's failure to protect claims against Major Blanton, Captain Runyon, and Captain Westbrook are **DISMISSED**.

### F. Supervisory Liability Claims

Additionally, Faircloth asserts a supervisory liability claim against Major Blanton, Captain Runyon, and Captain Westbrook in their individual capacities. ECF 6 at 3. Supervisory defendants can be liable for deliberate indifference under the Eighth Amendment if they personally participated in the alleged unconstitutional conduct. *See Marbury*, 936 F.3d at 1231 (addressing a warden's deliberate indifference to substantial risk of serious harm without the supervisory causal connection framework). Alternatively, a supervisor can be liable if there exists a causal connection between the "supervisor's actions and the alleged constitutional violation" or if "a supervisor's custom or policy . . . result[ed] in deliberate indifference to constitutional rights or when facts

support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith*, 749 F.3d at 1048. In relation to the latter causal connection, the Eleventh Circuit has held that "[a] causal connection can be established if a supervisor has the ability to prevent or stop a known constitutional violation by exercising his supervisory authority and he fails to do so." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) (citing *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010)).

As stated, Faircloth has failed to allege that Major Blanton, Captain Runyon, and Captain Westbrook personally participated in or knew of the alleged constitutional violations. Further, Faircloth fails to allege that either defendant created a custom or policy that prompted or failed to prevent the alleged constitutional violations. Moreover, Faircloth does not allege that either defendant had the authority to prevent or stop a known constitutional violation. Faircloth has, thus, failed to state a supervisory liability claim.

Accordingly, Faircloth's supervisory liability claims against Major Blanton, Captain Runyon, and Captain Westbrook are **DISMISSED**.

### G. Municipal Liability Claim

Next, Faircloth asserts a municipal liability claim against Houston County. ECF 6 at 3. "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, only when the City's policy or custom causes a constitutional violation may a municipality be held responsible. *Grech*, 335 F.3d at 1329; *Monell*, 436 U.S. at 694. Specifically, "to impose § 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights were violated; (2)

that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Here, the only constitutional violations alleged are those arising from Faircloth's detainment; Faircloth does not plausibly allege that Deputy Simmons' actions were prompted by any Houston County custom or policy that constituted deliberate indifference to constitutional rights. *See Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1312 (11th Cir. 2011) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality."). Thus, Faircloth has failed to state a claim for municipal liability under § 1983 against Houston County.

Faircloth's municipal liability claim against Houston County is **DISMISSED**.

### H. Assault and Battery Claim

Faircloth asserts a state law assault and battery claim against Deputy Simmons as well. ECF 6 at 3. Under Georgia law, "[a]ny violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." O.C.G.A. § 51-1-14. Faircloth alleges that Deputy Simmons grabbed him, shook him, and slammed his head on the concrete, causing a head injury. ECF 6 ¶¶ 27, 28, 30. Faircloth's allegations are sufficient to state a claim for assault and battery under Georgia Law. ECF 6 ¶¶ 27, 28, 30.

Faircloth's state law assault and battery claim against Deputy Simmons will proceed for further factual development.

### I. False Imprisonment Claims

Faircloth also asserts a claim against Deputy Simmons, Major Blanton, Captain Runyon, and Captain Westbrook for false imprisonment. ECF 6 at 3. Under

O.C.G.A. § 51-7-20, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." "Whoever arrests or imprisons a person without a warrant is guilty of a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law." *McClendon v. Harper*, 349 Ga. App. 581, 585-86, 826 S.E.2d 412 (2019).

Faircloth alleges that Bibb County Sheriff's Office arrested him without "entering the required OTA into GCIC/NCIC." ECF 6 ¶ 11. Faircloth further alleges that Houston County accepted him without a valid warrant, a valid OTA, or any other lawful basis for his custody in Houston County. *Id.* ¶ 13. Finally, Faircloth alleges that upon his arrival at Houston County, he was placed into solitary confinement without a hearing, notice, or explanation. *Id.* ¶¶ 20-21. While Faircloth has plausibly alleged that he was arrested and/or transferred without a warrant, he has failed to allege that any of the defendants were responsible for his allegedly illegal arrest, his transfer to Houston County, or his placement into solitary confinement. Faircloth has, thus, failed to state a false imprisonment claim against any defendant.[4]

This, Faircloth's state law false imprisonment claims against Deputy Simmons, Major Blanton, Captain Runyon, and Captain Westbrook are **DISMISSED**.

### J. Intentional Infliction of Emotional Distress Claim

Next, Faircloth asserts a claim under Georgia law for intentional infliction of emotional distress against Deputy Simmons. ECF 6 at 3. To state a claim for intentional

---

[4] Faircloth alleges that Bibb County officials Captain Wilton Collins, Deputy Dalton Palmer, Deputy Darius Inzar, Detective Shaun Bridger, and Jodi F. Adams "orchestrated an unlawful 1013 seizure without entering the required OTA into GCIC/NCIC." ECF 6 ¶ 12. However, he does not assert a false imprisonment claim or any other claim against those individuals, and he has not named them as defendants in this action. ECF 6 at 1, 3. Thus, any claims against those individuals are **DISMISSED**.

infliction of emotional distress, a plaintiff must allege: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Mayorga v. Benton*, 364 Ga. App. 665, 875 S.E.2d 908, 913 (2022).

Here, Faircloth has not alleged whether Deputy Simmons' actions caused emotional distress or whether his emotional distress, if any, was severe. ECF 6. Accordingly, Faircloth has failed to state a claim for intentional infliction of emotional distress against Deputy Simmons.

Faircloth's intentional infliction of emotional distress claim is **DISMISSED**.

**K. Negligent Hiring, Retention, and Supervision Claims**

Finally, Faircloth asserts a state law claim against Major Blanton, Captain Runyon, and Captain Westbrook for negligent hiring, retention, and supervision. ECF 6 at 3. "[N]egligent hiring, supervision, and retention are all separate theories of recovery 'based on the alleged negligent acts of the employers.'" *Friendship Enterprises, Inc. v. Hasty*, 889 S.E.2d 137, 14, 889 S.E.2d 137 (2023) (quoting *Quynn v. Hulsey*, 310 Ga. 473, 477, 850 S.E.2d 725 (2020)). An "employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 691 S.E.2d 356 (2010) (citation modified). To state a claim for negligent hiring, a plaintiff must allege the employer knew or should have known the employee posed a risk before hiring the employee. *ABM Aviation v. Prince*, 366 Ga. App. 592, 597-99, 884 S.E.2d 8 (2023). To state a claim for negligent retention, a plaintiff must allege the "employer discovere[d] the employee's

-13-

incompetence after hiring." *Id.* And to state a claim for negligent supervision, a plaintiff must allege that "the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Id.* (citation modified).

First, Faircloth does not allege that any of the supervisory defendants had any authority to hire or terminate employees or that any defendant was responsible for the hiring or supervision of Deputy Simmons. Moreover, Faircloth fails to allege that Deputy Simmons engaged in behavior similar to the alleged assault, much less that any supervisory defendant knew of similar past conduct by Deputy Simmons. ECF 6 at 1-3. Accordingly, Faircloth has failed to state a claim for negligent hiring, retention, and supervision.

Faircloth's negligent hiring, retention, and supervision claims against Major Blanton, Captain Runyon, and Captain Westbrook are **DISMISSED**.

## II. CONCLUSION

The following claims against Deputy Simmons will proceed for factual development: (1) excessive force; (2) deliberate indifference to medical needs; (3) conditions of confinement; (4) failure to protect; and (5) assault and battery under state law. Faircloth's remaining claims are **DISMISSED**. Accordingly, it is **ORDERED** that service be made on Deputy Paul Simmons of the Houston County Sheriff's Office.

Faircloth is advised that he must serve upon opposing counsel (or Deputy Simmons if he is unrepresented by counsel) copies of all motions, pleadings, discovery, and correspondence (including letters to the Clerk or to a judge) filed with the Clerk of Court. Fed. R. Civ. P. 5(a). Faircloth shall include with any paper which is filed with the Clerk of Court a certificate stating the date on which a true and correct copy of that

paper was mailed to Deputy Simmons or his counsel. The Clerk of Court will not serve or forward to Deputy Simmons or his counsel copies of any materials filed with the Court.

In addition, the following limitations are imposed on discovery: except with written permission of the Court first obtained, (1) interrogatories may not exceed twenty-five to each party (Local Rule 33.1), (2) requests for production of documents and things under Rule 34 of the Federal Rules of Civil Procedure may not exceed ten requests to each party (Local Rule 34), and (3) requests for admissions under Rule 36 of the Federal Rules of Civil Procedure may not exceed fifteen requests to each party (Local Rule 36).

Faircloth is responsible for diligently prosecuting his complaint, and failure to do so may result in dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. Faircloth is required to keep the Clerk of Court advised of his current address during the pendency of this action. Failure to promptly advise the Clerk of any change of address may result in the dismissal of this action.

**SO ORDERED**, this 29th day of January, 2026.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT